

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

———————————

No. 2:15-cr-127-NR

———————————

UNITED STATES,

v.

EDWARD WESLEY BAYNE, III,

Defendant.

———————————

## MEMORANDUM OPINION

———————————

### J. Nicholas Ranjan, United States District Judge

In July 2015, Edward Bayne pled guilty to one count of child-pornography charges.  Currently serving a seven-year prison sentence for his offense, Mr. Bayne now moves the Court for immediate compassionate release from prison due to the threat of the COVID-19 pandemic.

This Court has discussed the standard for granting such motions for early release in *United States v. Somerville*, — F. Supp. 3d —, 2020 WL 2781585 (W.D. Pa. May 29, 2020) (Ranjan, J.).  Under that standard, a medically compromised prisoner's showing of non-speculative risk of exposure to COVID-19 can justify compassionate release, unless the section 3553(a) sentencing factors weigh significantly against that outcome.

Here, Mr. Bayne has not made a strong enough showing to justify the sentence reduction he seeks. While the government concedes for purposes of the present motion that Mr. Bayne has shown "extraordinary and compelling" reasons for his early release, the Court concludes that the section 3553(a) factors do not justify Mr. Bayne's release, given the seriousness and circumstances of his offense and the nature of his original sentence.

Mr. Bayne's motion is therefore denied.

## BACKGROUND

Mr. Bayne is serving a sentence of seven-years imprisonment after pleading guilty to possession of material depicting the sexual exploitation of a minor in violation of 18 U.S.C. § 2252(a)(4)(B) & (b)(2). The term of imprisonment will be followed by 10 years of supervised release. Mr. Bayne must also pay $12,000 in restitution.

Mr. Bayne is currently scheduled to be released from prison on October 29, 2021. With one year remaining on his prison sentence, Mr. Bayne now moves under 18 U.S.C. § 3582(c)(1)(A)(i) for a reduction of his prison sentence to time served based on his underlying medical conditions and the risk of exposure to COVID-19 at FCI Loretto.[1] The government opposes Mr. Bayne's release.

Because the Court writes for the benefit of the parties, who are presumably familiar with the pertinent background facts, the Court will dispense with any comprehensive summary of those facts and only reference those facts necessary to its decision as they become relevant to the analysis below.

## DISCUSSION & ANALYSIS

Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may— upon consideration of a compassionate-release motion—

---

[1] Mr. Bayne initially filed his motion *pro se*. [ECF 52, 55]. After the Court appointed counsel for Mr. Bayne, counsel filed a new motion on Mr. Bayne's behalf. [ECF 56, 62]. After the government filed its opposition, [ECF 64], Mr. Bayne's counsel filed a reply brief, [ECF 68]. The Court considered all these filings in reaching its decision.

"reduce" a term of imprisonment if it finds that (1) "extraordinary and compelling reasons" warrant the sentence reduction, (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) consideration of the ordinary sentencing factors under 18 U.S.C. § 3553(a) favors reduction.

In 2018, Congress passed the First Step Act, which generally provides more opportunities for prisoners to seek compassionate release under section 3582(c)(1)(A)(i).  *See Somerville*, 2020 WL 2781585, at *2-3 (discussing the purpose and enactment of the First Step Act); *United States v. Freed*, No. 11-cr-132, 2020 WL 5604057, at *3 (W.D. Pa. Sept. 18, 2020) (Ranjan, J.) (same).  Under the First Step Act, a prisoner may bring a compassionate-release motion directly to court, as long as he or she first exhausts his or her administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring the prisoner, before filing his or her own motion, to first ask the Bureau of Prisons to file a motion on his or her behalf and then either exhaust the BOP's administrative appeal process or wait 30 days, whichever comes first).

Here, the government concedes that Mr. Bayne has exhausted his administrative remedies, and has sufficiently serious medical conditions to comprise extraordinary and compelling reasons that could warrant his release. The government argues, however, that Mr. Bayne fails to show that the section 3553(a) factors warrant his release.  Because the Court concludes that the applicable section 3553(a) factors weigh against Mr. Bayne's requested sentence reduction, the Court will deny Mr. Bayne's motion for early release.

### A.   Mr. Bayne has satisfied the 30-day "lapse" period to exhaust his administrative remedies.

Section 3582(c)(1)(A) permits a prisoner to bring a compassionate-release motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,

whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In other words, the prisoner "must at least ask the [BOP] to [file a compassionate-release motion] on their behalf and give BOP thirty days to respond." *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020).

Here, the government concedes that Mr. Bayne has exhausted his administrative remedies by requesting a motion for reduction in sentence from the Warden of FCI Loretto more than 30 days ago. [ECF 64, pp. 5-6]. The Court agrees. Mr. Bayne has exhausted his administrative remedies and the Court may properly consider his motion.

## B. The government concedes that Mr. Bayne has shown "extraordinary and compelling reasons" that could justify his release.

To justify early release from prison under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must show that there are "extraordinary and compelling reasons" that warrant his or her release. This Court has previously discussed the burden a defendant must meet to show that there are "extraordinary and compelling reasons." *See, e.g.*, *Somerville*, 2020 WL 2781585, at *7-8; *Freed*, 2020 WL 5604057, at *5-6.

But here, the Court does not need to analyze whether Mr. Bayne has met his burden, as the government agrees that Mr. Bayne has shown extraordinary and compelling reasons that could justify his early release. [ECF 64, pp. 6-9 ("[I]n the context of the COVID-19 pandemic, the government agrees that Bayne . . . has a 'serious physical or medical condition' that 'substantially diminishes' the defendant's ability 'to provide self-care within the environment of a correctional facility' during the pandemic, and is therefore an 'extraordinary and compelling reason' for release under 18 U.S.C. § 3582(c)(1)(A)(i).")].

Specifically, the government acknowledges that Mr. Bayne suffers from several health conditions that place him at a higher risk for contracting COVID-19—including,

obesity, sleep apnea, and hypothyroidism.  The government also acknowledges that Mr. Bayne ordinarily uses a CPAP machine while sleeping, but due to the risk of COVID-19 potentially being spread by using such machines, the BOP ordered Mr. Bayne to discontinue the use of his machine for the time being.

In light of the parties' apparent agreement as to Mr. Bayne's serious medical conditions, the Court will, for purposes of this motion, assume that extraordinary and compelling reasons are present here.  The Court turns now to the crux of the issue—the section 3553(a) considerations.

### C.   Reducing Mr. Bayne's sentence would conflict with the section 3553(a) considerations.

The existence of extraordinary and compelling reasons does not automatically warrant early release.  Rather, the Court must also consider the ordinary sentencing factors under 18 U.S.C. § 3553(a) "to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A); *see United States v. Easter*, 975 F.3d 318, 322, 327 (3d Cir. 2020).  If the section 3553(a) factors weigh strongly against release, that can overcome otherwise "extraordinary and compelling reasons."  *See United States v. Jones*, No. 12-38, 2020 WL 3871084, at *4 (W.D. Pa. July 8, 2020) (Ambrose, J.) ("[I]n considering the section 3553(a) factors, the Court should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence.") (cleaned up).[2]

---

[2] The section 3553(a) factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (b) to afford adequate deterrence to criminal conduct, (c) to protect the public from further crimes of the defendant, and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most

The Court has considered the record in this case, including the pre-sentence report, the sentencing submissions, and the materials submitted by the parties in connection with this motion. *E.g.*, [ECF 13, 14, 34, 43, 47]. Based on this record, the Court finds, taking a holistic view of all the applicable section 3553(a) factors, a sentencing reduction here is inappropriate. Specifically, the nature and circumstances of the offense, Mr. Bayne's characteristics, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from further crimes of Mr. Bayne, all counsel against early release.

No one disputes that Mr. Bayne's crime is serious. In 2013, the authorities began investigating Mr. Bayne after an investigative officer downloaded a file from Mr. Bayne (through a file-sharing network) that contained multiple child-pornographic images and videos.[3] As it turned out, such conduct was not a one-time occurrence for Mr. Bayne. He used peer-to-peer networks to download numerous child pornography files, and had a "voluminous" collection of child pornography stored on his computer equipment.

When the authorities initially searched Mr. Bayne's computer files after obtaining a search warrant, they found over 600 still images and 20 videos showing the sexual

---

effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *See United States v. Jackson*, 390 F. App'x 130, 133, n.5 (3d Cir. 2010) (cleaned up).

[3] The following facts are taken from the record, including the pre-sentence report and the sentencing submissions. *E.g.*, [ECF 13, 14, 34, 43, 47].

exploitation of minor-aged children. The child-pornographic images and videos were "sadistic, masochistic, and of a violent nature." Upon a later investigation of Mr. Bayne's electronic storage devices, the authorities found approximately 900 more videos and "numerous" still images depicting child pornography that Mr. Bayne had stored. These videos and images sometimes depicted victims under the age of eight, and involved bondage and other sadistic and violent conduct. In storing these files, Mr. Bayne created a library of child pornography on his computer, organizing the videos and photos by their content. And not only did Mr. Bayne possess, organize, and view these child-pornographic videos and images, he also assisted in distributing them.

The depraved scenes in these videos and images certainly caused extensive trauma to the children, who were victimized so that adults, like Mr. Bayne, could view them. And the trauma these victims suffer is heightened as the victims were merely minors—individuals who now must live most of their life with those experiences. What's more, Mr. Bayne viewed, stored, categorized, and distributed these images and videos while holding a position warranting the public's trust—mayor of the city of Seven Fields, Pennsylvania.

Further weighing against early release, Mr. Bayne committed his offense through electronic means, sitting in his home. Thus, Mr. Bayne's crime, unlike other crimes, can be executed without ever walking out the front door. *See, e.g.*, *United States v. Feiling*, 453 F. Supp. 3d 832, 842 (E.D. Va. 2020) (denying motion for compassionate release in part because "Defendant committed his instant [child-pornographic] offense while at home, meaning a term of home confinement would be less likely to protect the public"); *United States v. Miezin*, 456 F. Supp. 3d 911, 916 (N.D. Oh. 2020) ("In today's society with smartphones, tablets, laptops, smart TVs, and countless other devices, it would not be possible to place [Defendant] in home confinement and eliminate his ability to engage in his prior criminal [child-pornographic] conduct."); *United States v. Clews*, No. 17-cr-145, 2020 WL 3529780, at *4 (S.D. Cal. June 30, 2020) ("Though Defendant argues he would remain at home and pose no danger to the community, much of the conduct attributed to Defendant for which he

is presently incarcerated occurred from the comfort of his home. He possessed, distributed and produced child pornography at, from and on his ranch.").

In addition to the seriousness and circumstances of the offense, Mr. Bayne's characteristics do not counsel in favor of a sentence reduction. Mr. Bayne argues that various tests and assessments he underwent indicate he is not a threat to society. Specifically, Mr. Bayne emphasizes that he derived no sexual pleasure or gratification from his child-pornography files. Instead, he asserts that he collected the child pornography, not out of sexual pleasure, but out of "compulsi[on]." [ECF 68, p. 2]. But if Mr. Bayne "compulsively collect[ed] the [child pornography] files among other forms of pornography," as he asserts, the Court cannot discern how such compulsion renders him less of a threat to society than one who collects child pornography for sexual pleasure. Compulsion is just as much, if not more, of a motivator as personal pleasure.

Finally, considering just punishment, deterrence, and sentencing disparities, Mr. Bayne's sentence weighs against a reduction here. The starting point for any sentence is, of course, the advisory sentencing guidelines. The guidelines range for Mr. Bayne's sentence was 97-121 months. The sentence imposed was 84 months—thus already reflecting a significant downward variance.

The Court is concerned that any further sentence reduction here, in light of the specific facts of this case and the sheer volume of child-pornographic images and videos, would not promote respect for the law and would not be a sufficient deterrent for the serious nature of the crimes. *See, e.g.*, *United States v. Sachtleben*, No. 12-cr-127, 2020 WL 5095451, at *5 (S.D. Ind. Aug. 27, 2020) (denying motion for compassionate release in part because the defendant's child-pornographic crimes "involved minor victims . . . . These crimes were extremely serious and warrant just punishment to deter others. Furthermore, his crimes can be committed at home on the computer"); *United States v. Malecki*, No. 17-cr-18, 2020 WL 4013050, at *6 (W.D.N.Y. July 16, 2020); *United States v. Franco*, No. 14-cr-10205, 2020 WL 5548819, at *2-3 (D. Kan. Sept. 16, 2020). Such a reduction too would create sentencing disparities that the law seeks to avoid. *See, e.g., United*

- 8 -

*States v. Begin*, 696 F.3d 405, 412 (3d Cir. 2012) (stating that section "3553(a)(6) is designed to discourage" sentence "disparities within the federal system").

The Court concludes, taking a holistic view of the applicable 3553(a) factors, that reducing Mr. Bayne's sentence is not warranted here.

The Court's finding isn't meant to diminish Mr. Bayne's health conditions. But Congress has only authorized compassionate release if such a release is consistent with the sentencing factors under section 3553(a). As discussed above, a sentencing reduction here—even one that is only a reduction of about one year—would produce a sentence that conflicts with the factors the Court must weigh in evaluating a compassionate-release motion.

## **CONCLUSION**

For the reasons discussed above, Mr. Bayne's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is denied.

An appropriate order follows.

DATED this 27th day of October, 2020.

BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge

- 9 -